UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| 3D SCAN GUIDE, LLC,<br><br>Plaintiff<br><br>v.<br><br>CHROME FULL ARCH GUIDED SYSTEMS; and ROE DENTAL LABORATORY, INC.,<br><br>Defendants | Case No. 2:23-cv-0194-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS**

Plaintiff 3D Scan Guide ("Plaintiff" or "3D") respectfully submits this Supplemental Brief in Opposition to Defendants' Motion to Dismiss or Transfer [Dkt. No. 7] ("Defendant's Motion"). In view of the arguments made in Plaintiff's Opening Opposition Brief [Dkt. No. 12], which is incorporated here again by reference, and further in view of certain venue discovery responses received from Defendant, Defendant's Motion lacks merit and should be summarily denied.

Again, there is no dispute over the fact, as illustrated in the Complaint, that Defendant's own website plainly ratifies locations nationwide, including those located within this District, as its own for purposes of providing the infringing instrumentalities to residents of the State of Texas. The two labs in question ("Helm" and "Westbrook") are each plainly identified by the Defendants as "CHROME LABS," as illustrated below (*see* ROE00281)[1]:



The purported fact that Defendant "inherited" these locations from its predecessor does not alter the relationship, inasmuch as Defendant has ratified each such location as its own, and continues to include them on its own website as "Chrome Labs." *See, e.g., Godo Kaisha IP Bridge 1 v. Intel Corp.,* 2018 WL

---

[1] ROE production documents referenced herein are attached as Exhibit A.

5728524 at *3 (E.D. Tex. 2018) (fact that local office was part of an earlier acquisition does not alter the ongoing ratification of such location).

Further, discovery establishes the fact that Defendant provides the specific marketing materials for each individual lab location, which are plainly designed as a selling tool for the Accused Instrumentalities. *See* ROE00194, reproduced for reference below:



Other marketing materials likewise are provided by Defendant to their local lab partners, for example the brochure at ROE00150-163. Such marketing materials are designed such that they present the individual lab as a single entity with Defendant, including because such materials are designed and intended for the

SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS                                          3

local lab to insert its own logo alongside the Chrome name and trademarks for presentation. *See, e.g.,* Defendant Response to Interrogatory 3; *see also* ROE00150, reproduced for reference below:



The undisputed fact that Defendant has ratified each local lab as its own, and encourages such labs to distribute promotional literature in which the local lab and Chrome are presented together and without distinction, dictates denial of Defendant's Motion. *See, e.g., CA, Inc. v. Netflix, Inc.,* 2021 WL 4955201 at *6 (E.D. Tex. Sep. 27, 2021) (reversed on other grounds at 2022 WL 167470 (Fed. Cir. Jan. 19, 2022)) ("Defendant's consistent reference to the OCAs as belonging to Defendant in its marketing materials is sufficient to ratify the OCAs as Defendant's place of business").

The inter-relationship among Defendant and its local dental labs is further evidenced by the fact that the Accused Instrumentalities are manufactured, in part, by the local labs themselves based upon patient-specific 3-D print files provided by Defendant. *See* Defendant Response to Interrogatory 2. Such arrangement illustrates the fact that there is no distinction, from a consumer (patient) perspective, between Defendant and the local lab because the finished product (as installed into the mouth of the patient) is a single assembly. *See, e.g.,* ROE00160-163; *see also* ROE00164-193 (illustrated step-by-strep installation in patient, including all components as manufactured by Defendant and as printed by the local lab per 3-D file provided by Defendant); *see also* ROE00207-228 (same). The practical

application of these facts is that the local lab serves as a marketing, sales, manufacturing, and installation proxy for Defendant.

Moreover, there is no dispute over the fact that Defendant educates and dictates the manner in which its dental labs located in this District perform their roles in the acts of infringement.  Such is illustrated at ROE00243-245, for example, which instructs on the proper photography to be used, the proper bite record, and the proper CBCT Scan.  Likewise, Defendant openly publicizes the fact that specific data files are *required* from the dentist (3D CBCT Digital Scan) in order for the CHROME implant to be custom manufactured.  *See* ROE00012-018, excerpted below for reference:



## The CHROME process

### Exam & records
Following the initial consultation, your dentist will do an exam and review your medical history with you. A 3D CBCT digital scan will be taken, in addition to photographs and impressions of your mouth. These will be sent to a CHROME GuidedSMILE lab where your custom treatment plan and smile will be designed and created.

### CBCT scan
A *CBCT scan* is a specialized type of x-ray that produces undistorted three-dimensional digital imaging of the teeth, tissue, and bone. A CBCT scan provides high-definition images with substantially less radiation to the patient compared to a regular CT examination.

As explained by Defendant (above), the CHROME implant is designed and created at "a CHROME GuidedSMILE Lab."  The specific requirements *dictated* by Defendant are likewise set forth at ROE00035 and ROE00052 (requiring, *inter alia*, six specific photographs, specific impressions and bite registrations, and specific CBCT scans).  Such requirements must be satisfied on a "per-case basis," and illustrate the fact that the Defendant does, in fact, dictate the means by which local labs perform their role in the sale and manufacturing of the Accused Instrumentalities, at least because Defendant requires specific images

and data files to be created and delivered. *See also* Defendant Response to Interrogatory 2 (admitting that each order requires certain patient-specific data, which is reviewed by Defendant for quality assurance). Even further, Defendant ratifies the local lab, and presents such lab as an extension of Defendant itself for purposes of at least design and manufacture, as illustrated above at ROE00012 (explaining how photographs and impressions "will be sent to a CHROME GuidedSMILE Lab where your custom treatment plan and smile will be designed and created").

In sum, Defendant's Motion should be denied. As shown herein, and as further argued in Plaintiff's Opening Opposition Brief [Dkt. No. 12], the three *Cray* factors are satisfied, and venue is proper in this District.

//

|  |  |
|---|---|
| Dated:  November 17, 2023 | Respectfully Submitted<br><br>*/s/ M. Scott Fuller*<br>M. Scott Fuller<br>Texas Bar No. 24036607<br>Georgia Bar No. 100968<br>sfuller@ghiplaw.com<br><br>**GARTEISER HONEA, PLLC**<br>119 W. Ferguson Street<br>Tyler, Texas 75702<br>Telephone: (903) 705-7420<br>Facsimile: (888) 908-4400<br><br>**ATTORNEYS FOR PLAINTIFF**<br>**3D SCAN GUIDE, LLC** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system.

*/s/ M. Scott Fuller*
M. Scott Fuller