IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| 3D SCAN GUIDE, LLC, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | CIVIL ACTION NO. 2:23-CV-00194-JRG |
| CHROME FULL ARCH GUIDED SYSTEMS and ROE DENTAL LABORATORY, INC., | § § § § § | |
| *Defendants*. | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Chrome Full Arch Guided Systems and Roe Dental Laboratory, Inc.'s (collectively, "Defendants" or "ROE") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) for Improper Venue (the "Motion"). (Dkt. No. 7.) In the alternative, Defendants move to transfer this case to the Northern District of Ohio pursuant to 28 U.S.C. § 1406. Having considered the Motion, the related briefing, and the relevant authorities, the Court concludes that the Motion should be **DENIED**.

**I.  BACKGROUND**

On April 27, 2023, Plaintiff 3D Scan Guide, LLC filed a complaint against Chrome Full Arch Guided Systems and Roe Dental Laboratory, Inc., alleging infringement of U.S. Patent No. RE 47,368 (the "Asserted Patent").[1]  (Dkt. No. 1.)

ROE initially filed its Motion to Dismiss for Improper Venue on July 6, 2023.  (Dkt. No. 7.)  On August 25, 2023, the Court ordered targeted venue discovery.  (Dkt. No. 21.)  The parties

---

[1] Various CHROME products, which are the focus of the venue discovery discussed herein, are the products accused of infringement and are both manufactured (in part) and delivered in this District.

submitted supplemental briefing after venue discovery closed.  (Dkt. No. 23; Dkt. No. 24.)  In the Motion, ROE contends that venue is improper in the Eastern District of Texas (the "EDTX") and requests the Court to either dismiss this action for improper venue or transfer it to the Northern District of Ohio.  (Dkt. No. 23.)

ROE is an Ohio corporation and maintains its principal place of business in Independence, Ohio.  (Dkt. No. 7 at 3.)  3D Scan Guide is a limited liability corporation incorporated in Delaware and maintains its principal place of business in New York, New York.  (Dkt. No. 1 at 1.)

## II.  LEGAL STANDARD

A party may move to dismiss an action for "improper venue."  FED. R. CIV. P. 12(b)(3).  "Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff."  *ATEN Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 120–21 (E.D. Tex. 2009) (citation omitted).  A plaintiff may carry its burden by presenting facts, taken as true, that establish venue.  *Id.*  The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."  *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:13-cv-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)).  The Federal Circuit has emphasized that "each case depends on its own facts" and "no one fact is controlling."  *In re Cray Inc.*, 871 F.3d 1355, 1362, 1366 (Fed. Cir. 2017).  If venue is improper, the Court must dismiss the case, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

In an action for patent infringement, venue is controlled by 28 U.S.C. § 1400(b).  Pursuant to 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  Under the residency requirement, the

2

Supreme Court held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017). Plaintiff does not attempt to argue that venue is established under the residency requirements of 28 U.S.C. § 1400(b). (Dkt. No. 12 at 2.) Therefore, to establish venue, Plaintiff must present facts that, if taken as true, show that ROE has a regular and established place of business in the EDTX. Under the patent venue statute, a "regular and established place of business" must be (1) "a physical place in the district"; (2) "regular and established"; and (3) "the place of the defendant." *In re Cray*, 871 F.3d at 1360.

### III. DISCUSSION

In its Motion, ROE contends that venue is improper because ROE does not reside in the EDTX or have a regular and established place of business in the EDTX.[2] (Dkt. No. 7 at 5-6.) Further, ROE contends it has only two authorized dealers in the EDTX, both of which are independent businesses. (*Id.* at 6.) In response, Plaintiff argues that ROE has a regular and established place of business in the EDTX at two different EDTX locations, and that ROE has ratified each location as its own. (Dkt. No. 12 at 2-3.)

#### A. Physical Place in the District

Under the first *Cray* factor, "there must be a physical place in the district." *In re Cray*, 871 F.3d at 1360. The place should be a "physical, geographical location in the district from which the business of the defendant is carried out." *Id.*

The parties do not dispute that the first *Cray* factor is present. (*See* Dkt. No. 23; Dkt. No. 24.) The Helm Dental Laboratory is located in the EDTX at 2801 Capital Street, Wylie, TX 75098. (Dkt. No. 12 at 3.) The Westbrook, a MicroDental Lab, is located in the EDTX at 3309 Essex

---

[2] ROE admits that Chrome Full Arch Guided Systems is an assumed name of ROE, under which ROE conducts business in the EDTX. (Dkt. No. 7 at 2.)

Drive, Richardson, TX 75082.  (*Id.*)   ROE's website at www.chromeguidedsmile.com lists both locations under the "CHROME Lab Location" webpage and explains that visitors may "[l]ocate [their] closest CHROME Lab below."  (*Id.*)  Moreover, ROE provides contact information for each physical location.  (*Id.*)  ROE further admits that the two locations are "authorized dealers" for ROE.  (Dkt. No. 7 at 6.)

Both the Helm and Westbrook locations are "physical, geographical locations" in the EDTX from which ROE conducts its business.  Accordingly, that satisfies the first *Cray* factor.

### B. Regular and Established Place of Business

Under the second *Cray* factor, a "regular and established place of business" requires "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'"  *In re Google*, 949 F.3d at 1345.  The Federal Circuit reiterated that "[t]he essential elements of agency are (1) the principal's right to direct or control the agent's actions[;] (2) the manifestation of consent by the principal to the agent that the agent shall act on his behalf[;] and (3) the consent by the agent to act."  *In re Volkswagen*, 28 F.4th at 1208–09 (quoting *id.*).  "The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."  *In re Google*, 949 F.3d at 1345–46 (quoting Restatement (Third) of Agency § 1.01 cmt. f(1)).

In *In re Volkswagen*, the Federal Circuit, relying on *In re Google*, noted that for venue, an "agency relationship requires [that] 'the principal have the right throughout the duration of the relationship to control the agent's acts.'"  *In re Volkswagen*, 28 F.4th at 1209 (quoting *Pac. Gas & Elec. Co.*, 838 F.3d at 1359).  The Federal Circuit distinguished the necessary "interim control," which provides the interim right to give step-by-step instructions to the purported agent, from

4

agreements that merely "impose constraints" or "set[] standards . . . for acceptable service quality." *Id.* at 1209 (quoting Restatement (Third) of Agency § 1.01(f)(1)). The Federal Circuit explained that "setting standards in an agreement for acceptable service quality does not of itself create a right of control." *Id.*

The parties do not appear to dispute that ROE has no employees at either the Helm or Westbrook locations. (Dkt. No. 7; Dkt. No. 12.) Accordingly, the Court need not consider whether ROE's employees regularly conduct business at those locations.

The Court now considers whether—in light of *In re Volkswagen*—the identified personnel at the Helm and Westbrook locations fairly serve as ROE's agents regularly conducting ROE's ongoing business for the purposes of venue under Section 1400(b).

### 1. Regular, Physical Presence of Agents of ROE

ROE presents various arguments disclaiming any agency relationship between itself and the Helm and Westbrook locations. (Dkt. No. 7; Dkt. No. 23.) ROE argues that Helm and Westbrook are "independent businesses, not agents." (Dkt. No. 7 at 2.) ROE further argues that it "exercises no control over the authorized dealers," citing the lack of agreements between ROE and the two locations apart from routine orders and invoices. (Dkt. No 7 at 7; Dkt. No 23 at 3.) ROE notes that it has no non-disclosure agreement with Helm and Westbrook and did not provide any training at those locations. (Dkt. No. 23 at 3.) ROE further argues that it has no control over how Helm and Westbrook sells the accused CHROME products; rather, Helm and Westbrook maintain full control over their day-to-day operations. (Dkt. No. 7 at 8; Dkt. No. 23 at 3.) Finally, ROE argues that it has not provided Helm or Westbrook with any equipment or inventory, and that it has no consumer warranties that would be serviced by Helm or Westbrook. (Dkt. No. 23 at 3.)

In response, Plaintiff argues that the accused CHROME products are manufactured in part by the Helm and Westbrook labs based on patient-specific 3-D print files provided by ROE. Plaintiff notes that the fully assembled CHROME product is installed into the patient's mouth in a single assembly that includes components generated by Helm and Westbrook at the direction of ROE. (Dkt. No. 24 at 4.) Furthermore, Plaintiff argues that ROE "educates and dictates the manner in which its dental labs [] perform their roles" by requiring specific data files from the dentist, such as a proper CBCT scan. (*Id.* at 5.) Specifically, ROE requires the Helm and Westbrook locations to provide six specific photographs, specific impressions and bite registrations, and specific CBCT scans of the patient. (*Id.*) Then, ROE generates patient-specific 3-D print files and provides them to Helm and Westbrook to print. (*Id.* at 4.)

The Court finds, consistent with the Federal Circuit's guidance in *In re Volkswagen*, that Helm and Westbrook are ROE's agents for the purpose of conducting ROE's business in this District. The accused CHROME products are dental implants that are sold by ROE through authorized dealers called "Chrome Labs." (Dkt. No. 7 at 3.) The accused CHROME products are manufactured in part by ROE and in part by the Chrome Labs in the EDTX. The complete CHROME assembly incorporates components made by Chrome Labs in the EDTX using patient-specific data. (Dkt. No. 24 at 4-5.)

ROE provides regular, "step-by-step instructions" directing Helm and Westbrook's generation of the patient-specific portion of the accused CHROME products, assembly of the complete CHROME package, and installation of the complete assembly into the patient's mouth.[3]

---

[3] *See In re Volkswagen*, 28 F.4th at 1212 (finding venue improper because "there are no 'step-by-step' instructions from [Defendants] that [the alleged agents] must follow when [conducting the Defendants' business]."). Unlike the agreements at issue in *In re Volkswagen* which merely "imposed constraints" or "set[] standards . . . for acceptable service quality," here—as discussed—ROE has and exercises "the right throughout the duration of the relationship to control the agent's acts." 28 F.4th at 1209–10.

To manufacture the patent-specific component of CHROME, ROE requires dentists at Helm and Westbrook to capture multiple specific photographs of the patient's face, images of the patient's impressions and bite registration, and CBCT scans. (Dkt. No. 24 at 4-5; Dkt. No. 24-1.) Furthermore, ROE provides detailed instructions on how to obtain images of satisfactory quality. (*Id.*) Then, Helm and Westbrook send the patient images to ROE, which evaluates them, generates patient-specific 3-D print files, and sends the print files back to Helm and Westbrook. (Dkt. No. 24 at 4-5; Dkt. No. 23 at 2-3.) Helm and Westbrook use the ROE-provided 3-D print files to print the plastic components of the CHROME package. (Dkt. No. 23 at 3.) ROE creates other metal components of the CHROME package and ships them to Helm and Westbrook, which assembles the complete CHROME package as instructed. (Dkt. No. 23 at 3.) In its promotional materials, ROE describes in detail the surgical steps involved in the installation of CHROME. (Dkt. No. 24-1.) Following those instructions, Helm and Westbrook install the completed CHROME assembly into the patient's mouth. (Dkt. No. 23 at 3.) ROE, Helm, and Westbrook work collaboratively, under the overall direction of ROE, to create the CHROME package and install it into the patient's mouth. (Dkt. No. 24 at 4-5, Dkt. No. 23 at 2-3.) Therefore, ROE exercises "interim control" by directing Helm and Westbrook's actions as to the generation and installation of the CHROME package. Based on the foregoing, the Court finds that the agency relationship between ROE and the Helm and Westbrook labs satisfies the second *Cray* factor.

### C. Place of the Defendant

Under the third *Cray* factor, "'the regular and established place of business' must be 'the place of the defendant.'" *In re Cray*, 871 F.3d at 1363. To be the place of the defendant, "the defendant must establish or ratify the place of business." *Id.* A court may consider "whether the defendant owns or leases the place"; "exercises other attributes of possession or control over the place"; "[m]arketing or advertisements . . . but only to the extent they indicate that the defendant

itself holds out a place for its business"; "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory"; or whether the defendant "places its name on a sign associated with or on the building itself." *Id.* at 1363–64. However, the Federal Circuit stated that "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient." *Id.* at 1364.

ROE argues that the Helm and Westbrook locations are not places "of ROE" because they are independent businesses that are "not owned, operated, or controlled by ROE." (Dkt. No. 7 at 2). Though the addresses and telephone numbers for Helm and Westbrook are on ROE's website, any message to Helm and Westbrook goes directly to each lab's respective recipient, not to ROE. (Dkt. No. 23 at 2.) ROE further notes that its website holds out Helm and Westbrook as "Helm Dental Laboratory" and "Westbrook, a MicroDental Lab," not as ROE's places of business. (Dkt. No. 13.) ROE also argues that it has no agreements for the inclusion of Helm of Westbrook on its website. (*Id.* at 4.)

Plaintiff responds that the third *Cray* factor is satisfied because the Helm and Westbrook locations are "of ROE." (Dkt. No. 12 at 2-4; Dkt No. 24 at 2-4.). Plaintiff argues that ROE's website identifies Helm and Westbrook as "CHROME Labs." (Dkt No. 24 at 2.) Plaintiff further notes that ROE provides marketing materials, such as brochures and presentation templates, that "present the individual lab as a single entity with [ROE]." (*Id.* at 3.) For example, ROE's brochures and presentation templates include placeholder fill-ins for the name of the lab right beneath the CHROME name, such as CHROME Guided Systems and Chrome Full Arch Guided Stability. (*Id.* at 2-3.) Plaintiff contends that ROE has thus ratified Helm and Westbrook as its own. (*Id.* at 4.)

The Court finds that ROE holds the Helm and Westbrook locations out as its places of business because it exercises interim control over each lab's activities and holds out to the public that ROE's

8

CHROME services and products are being offered at each lab. As previously detailed under the second *Cray* factor, ROE has "interim control" over the conduct of Helm and Westbrook employees pertaining to the creation and installation of the CHROME Accused Product.

Moreover, on its website, ROE advertises to its customers that the Helm and Westbrook locations provide CHROME products and services. (Dkt. No. 24 at 2-4.) The ROE website identifies the Helm and Westbrook locations as "CHROME Labs" and explains that a user can "locate your closest CHROME Lab below" to "contact your preferred CHROME Lab." (*Id.* at 2.) In addition, ROE'S marketing materials hold out its labs as being part of ROE. ROE provides CHROME brochures and presentations to its CHROME Labs for distribution to customers. Such materials prominently display ROE's CHROME branding while including placeholder fill-ins for the name of the lab. One presentation includes a placeholder for Helm and Westbrook right beneath ROE's trade name, CHROME Guided Systems. (*Id.* at 4.) Indeed, ROE presents its CHROME Labs, including Helm and Westbrook, as an extension of itself. That is sufficient to satisfy the third *Cray* factor. Accordingly, the Court concludes that ROE has ratified Helm and Westbrook as its places of business.[4]

In sum, Plaintiff has established all three factors under *Cray*, and the Court concludes that venue is proper as to ROE in the EDTX.

## IV. CONCLUSION

For the reasons stated herein, ROE's Motion should be and hereby is **DENIED**.

---

[4] It is noteworthy that ROE has no apparent alternative method to conduct its business except through Helm and Westbrook (and similar locations in other districts). Helm and Westbrook are a direct and integral part of the manufacturing process for the accused CHROME products. Without them, ROE's business model, including its interaction with the public and its delivery and installation of the accused CHROME products collapses. The Court is persuaded that neither *In Re Cray* nor *In Re Volkswagon* were conceived to provide a step-by-step process for corporations to structure their businesses to achieve a preconceived impact on venue. When the business itself is actually conducted in this District by the Defendants, as the venue discovery here confirms, defendants like ROE should not be rewarded for efforts to elevate form over substance.

**So ORDERED and SIGNED this 14th day of March, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE