**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| 3D SCAN GUIDE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHROME FULL ARCH GUIDED SYSTEMS; and ROE DENTAL LABORATORY, INC.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | NO. 2:23-CV-00194-JRG |

**CLAIM CONSTRUCTION ORDER**

Before the Court is Plaintiff's Opening Claim Construction Brief (Dkt. No. 30) filed by 3D Scan Guide, LLC ("Plaintiff" or "3D Scan"). Also before the Court is the Defendants' Responsive Claim Construction Brief (Dkt. No. 32) filed by ROE Dental Laboratory, Inc. and Chrome Full Arch Guided Systems (collectively, "Defendants").

The Court held a hearing on July 18, 2024. Having considered the parties' briefing along with arguments of counsel, the Court resolves the disputes as ordered herein.

## I. BACKGROUND

Plaintiff alleges infringement of U.S. Patent No. RE47,368 ("the '368 Patent" or the "Asserted Patent"), which is in the field of manufacturing processes and is more specifically about a modular drilling template for use in the practice of dentistry. In this case, the subject template is used for installing dental implants into the jawbone structure of human patients.

The title of the '368 Patent is "Modular Template for Drilling Holes and Method of Making Same" and the Abstract states:

> A template for use with an instrument to drill a hole in a surface at a desired location. The template includes a body which has a negative impression of the surface, and a guideway having a first end positioned to open onto the desired location when the body is placed in conforming contact with the surface and a second end positioned on an exterior surface of the body. The second end of the guideway is connected to the first end by a passage. The guideway is preferably positioned in a portion of the template which is removable from the remainder thereof. The template also includes a stop for limiting the depth of penetration of the drill bit into the hole, a first fastener for attaching the stop to the body and a second fastener for fastening the removable portion of the template to the remainder of the template.

## II. LEGAL STANDARDS

"'[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Innova/Pure-Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). "[T]he court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*); *aff'g,* 517 U.S. 370, 390 (1996).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

When construing claims, "[t]here is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.,* 715 F.3d 1363,

1373 (Fed. Cir. 2013) (citing *Phillips,* 415 F.3d at 1312–13). Courts must therefore "look to the words of the claims themselves . . . to define the scope of the patented invention." *Id.* (citations omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.,* as of the effective filing date of the patent application." *Phillips,* 415 F.3d at 1313. This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the United States Patent and Trademark Office ("PTO") understood the patent. *Phillips*, 415 F.3d at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is

relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

Intrinsic evidence, therefore, is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.,* 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips,* 415 F.3d at 1312). But for claim terms with less-apparent meanings, courts consider " 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean[,] [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.' " *Phillips,* 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116). In those situations, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) (citation omitted). "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

However, the intrinsic record may not be sacrificed in favor of extrinsic evidence. According to *Phillips*, reliance on dictionary definitions, for example, at the expense of the

specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321.

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910, 134 S. Ct. 2120, 2129 (2014). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id*. The claims "must be precise enough to afford clear notice of what is claimed," but that consideration must be made while accounting for the inherent limitations of language. *Id.* at 908. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III. AGREED TERMS

The parties have reached agreement on the following term and construction as submitted in their Joint Claim Construction Chart Pursuant to P.R. 4-5(d). (Dkt. 33-1.)

| Term | Agreed Construction |
|---|---|
| "means for securing"<br><br>(claim 11) | This is a means-plus-function limitation subject to 35 U.S.C. § 112 ¶ 6.<br><br>The agreed function is "to secure the removable portion to the body."<br><br>The agreed corresponding structure is "a fastening clip or its equivalent." |

## IV. DISPUTED TERMS

### 1. "uncut irregular surface"

| Claim Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "uncut irregular surface"<br><br>(claims 11, 19) | Plain and ordinary meaning | "an uneven surface that has not been cut or planed" |

The disputed term "uncut irregular surface" appears in both independent claims 11 and 19 in similar context. Taking claim 11 as exemplary, it reads as follows:

> 11. A template for use with an instrument for penetrating an ***uncut irregular surface*** through a hole in said ***uncut irregular surface***, said hole being located at a desired location on said ***uncut irregular surface***, said template comprising:
>
> a body including a custom surface shaped as a negative impression of the ***uncut irregular surface*** to conform to the ***uncut irregular surface***, the body having a receiving section;
>
> a removable portion configured to be arranged in the receiving section;
>
> a removable guideway arranged at the removable portion and having a first end positioned to open onto said desired location when said body is placed in conforming contact with said ***uncut irregular surface***, wherein the removable guideway comprises an inner piece and an outer piece, and wherein the outer piece includes an outer surface configured to engage an inner surface of the removable portion;
>
> means for securing said removable portion to said body; and
>
> the inner piece configured as a stop for limiting a depth of penetration of said instrument into said hole.

Plaintiff submits the plain and ordinary meaning of the term "uncut irregular surface" is appropriate. Defendants, on the other hand, urge for it to be construed as "an uneven surface that has not been cut or planed" due to Plaintiff's application of this limitation in its infringement contentions. Specifically, Defendants state that Plaintiff is accusing the Osteotomy Guide of

infringing this claim element when, according to the surgical protocol, it is not put into use until after the patient's jaw has been surgically altered into a smooth, horizontal plane of bone. Therefore, Defendants argue, the Osteotomy Guide is not used with an "uncut irregular surface." Defendants assert that the plain and ordinary meaning of this term is insufficient and its proposed construction should be adopted because Plaintiff's infringement contentions broaden the meaning of "uncut irregular surface" to encompass a surface that has surgically altered and planed flat.

To clarify the ambiguous nature of this term, Defendants advance a construction made of two dictionary definitions where the meaning of "uncut" means "not been cut or planed," and the definition of "irregular" means "uneven." Defendants point to the file history of the Asserted Patent as support, arguing that the applicant made a prosecution history disclaimer by adding the limitation of an "uncut irregular surface" to distinguish over prior art on the basis that the prior art is "planar" or "flat," which is not "irregular." Defendants submit that Plaintiff should be barred from asserting a "plain and ordinary meaning" of "uncut irregular surface" that includes a cut or planed surface when it was specifically disclaimed during prosecution.

Plaintiff did not respond to the substance of Defendants arguments in its briefing besides generally taking the position that there is no clear and unmistakable disclaimer of claim scope and that the negative use of the term "planed" introduces unnecessary ambiguity into the scope of the claim. Plaintiff urges the plain and ordinary meaning of this term because it is straightforward and simple such that the plain meaning can be readily understood by one of skill in the art. During the hearing, Plaintiff restated its position and additionally clarified that it does not dispute that "uncut" means something that is not cut and "irregular" means something that is not flat.

The Court looks first to the claims and notes that the adjectives "uncut" and "irregular" describing a "surface" are straightforward, simple terms that are easily understandable. Defendants

submit no evidence that an "uncut irregular surface" is ambiguous or unclear to a person of ordinary skill in the art. Just because Plaintiff may be applying the term in its infringement contentions in a way that Defendants disagree with does not necessarily mean that the term is inherently ambiguous or unclear. The Court does not find this term to be unclear and further does not find the extrinsic evidence of dictionary definitions to be necessary or compelling in this instance. Nor does Defendant's proposed construction accurately capture the meaning of the term to the extent it includes the word "planed," as a surface that is planed adds additional and different limitations as compared to a surface that has been cut.

The Court next reviews the prosecution history of the Asserted Patent, which is a reissue of Patent No. 9,050,665 ("the '665 Patent"). The Court notes that the cited office action rejection occurred in 2011 and was with respect to claims 1, 2, 5-10, and 23. (*See* Dkt. 32-8 at 7.) Claims 11 and 19 at issue here were not added until the patent reissued in 2017. However, the limitation of an "uncut irregular surface," which was added in a series of amendments to claim 1, pervades claims 11 and 19 in a similar manner as claim 1, so the amendments and accompanying arguments made in support thereof apply equally to these claims.

The underlying Application No. 11/438,217 was subject to a long series of office actions and requests for continued examination over nine years before issuing as the '665 Patent. The term, an "irregular" surface, was initially added to overcome a rejection over the Lindbald prior art reference, which disclosed a dowelling jig for use in carpentry. The Applicant distinguished his invention over Lindbald by arguing that the invention "is used with *irregular* surfaces, such as a jaw" where the surfaces have "dimensions and contours [] not known ahead of time," as contrasted with Lindbald which was used "only with *regular* surfaces having predictable contours." (June 1, 2011, Response to Office Action, p. 11) (emphasis theirs).

The application was later rejected by the Examiner based on the Sanford prior art reference, which disclosed provisional components for use during orthopedic surgery to facilitate the selection of a permanent orthopedic prosthesis. In a response, the Applicant argued that in Sanford, the template (provisional component) only contacts the femur on a flat surface which is cut into the femur, so the provisional component does not include "a custom negative impression of said *irregular* surface." (November 30, 2011, Amendment After Final Rejection, p. 6) (emphasis theirs).

The application was subject to another round of rejections based on Sanford and the Applicant overcame the rejection by amending claim 1 in accordance with the Examiner's suggestion. Specifically, the Applicant clarified that the irregular surface is also an ***uncut*** surface by adding the language at issue here: an "uncut irregular surface." In his remarks/arguments, the Applicant submitted that Sanford fails to disclose this element because Sanford "requires the surface to be drilled to be a cut planar surface" and the template "only contacts the femur on a cut flat surface," so it does not include "a custom negative impression of said *uncut irregular* surface." (January 31, 2012, Amendment After Final Rejection, p. 6) (emphasis theirs).

The Applicant therefore disclaimed application of the template invention to a surface that is cut and flat, such as in Sanford, which is why he added the limitations uncut and irregular. The words cut/uncut and flat/irregular are essentially antonyms of each other which the Applicant used to distinguish the invention over Sanford. "[W]hen the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). Accordingly, the term "uncut

irregular surface" cannot be stretched to encompass scope that was explicitly disclaimed during prosecution.

Though the Court does not consider Plaintiff's infringement contentions to have direct bearing on claim construction, it is helpful context to provide an exemplary application for what Plaintiff intends the plain and ordinary meaning to be. Here, Plaintiff stretches that meaning too far. The Court therefore finds the claim term **"uncut irregular surface" should be given its plain and ordinary meaning, which does not include a "cut flat surface."**

**2. "removable guideway"**

| Claim term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "removable guideway"<br><br>(claim 11) | Plain and ordinary meaning | "a guideway that is designed to be removed from the removable portion during normal use" |

The term "removable guideway" appears in claim 11, which reads in relevant part as follows:

> 11. A template for use with an instrument for penetrating an ***uncut irregular surface*** through a hole in said ***uncut irregular surface***, said hole being located at a desired location on said ***uncut irregular surface***, said template comprising:
>
> a body . . .
>
> a removable portion . . .
>
> a ***removable guideway*** arranged at the removable portion and having a first end positioned to open onto said desired location when said body is placed in conforming contact with said uncut irregular surface, wherein the ***removable guideway*** comprises an inner piece and an outer piece, and wherein the outer piece includes an outer surface configured to engage an inner surface of the removable portion;

The dispute between the parties is whether "removable" can encompass destructive alteration. Plaintiff argues that Defendants' proposed construction improperly imports limitations that are not in the specification. In particular, Plaintiff states that nothing in the specification teaches or requires that the claimed "removable guideway" be "designed to be removed," or that it must be "removed from the removable portion." Plaintiff asserts that the claim merely requires a "removable portion" and, separately, a "removable guideway," which does not foreclose the option of having both the "portion" and "guideway" be removed together. As for Defendants' proposed construction, Plaintiff contends that it creates more ambiguity and invites disputes rather than clarifying the claim term. Instead, Plaintiff asks the Court to adopt the term's plain and ordinary meaning.

Defendants disagree, again pointing to Plaintiff's application of this limitation in its infringement contentions that identify a circular opening on the Osteotomy Guide as being the removable guideway. Defendants assert that although the accused Osteotomy Guide as a whole is removable, the individual openings cannot be removed from the Osteotomy Guide during normal use. According to Defendants, the Osteotomy Guide would have to be cut or otherwise destroyed to remove the individual openings from the Guide, and the plain the ordinary meaning of "removable guideway" cannot encompass destructive alteration. In support of their proposed construction, Defendants cite to various cases where "removable" is defined as being designed to be removed in its normal and intended operation. Defendants further argue that because claim 11 describes "a removable guideway arranged at the removable portion," that indicates the removability of the guideway relates to the removable portion.

The Court notes that as an initial matter, the physical relationship between the "removable guideway" and the "removable portion" is laid out by the wording of the claim. Claim 11 describes

a template comprising distinct elements, one being a "removable portion" and another being a "removable guideway" that is "arranged at the removable portion." The "removable guideway" further "comprises an inner piece and an outer piece." The outer piece of the removable guideway has "an outer surface" that is "configured to engage an inner surface of the removable portion." It is reasonable to presume, therefore, that if the outer surface of the removable guideway can engage the inner surface of the removable portion, then it can also disengage, thereby making the guideway "removable," as described, in relation to the removable portion. Accordingly, while Plaintiff is correct that both the "portion" and "guideway" can be removed together, the claim also specifically contemplates that the "guideway" can be removed ***from*** the "removable portion." In addition to the fact that both elements are separately depicted as being "removable," the structure defined by the claim explains exactly how the guideway can be removed in relation to the removable portion. Thus, the two elements are not treated as exclusively being "removable" as a unit, as Plaintiff appears to suggest.

This understanding is illustrated in further detail in the specification. FIG. 3, reproduced below, identifies a body 114' that includes a "removable portion 130" and a "[g]uiding assembly 136 [that] includes an inner piece 138 and an outer piece 140," both removably connected to each other and to the removable portion by threading. ('368 Patent, 6:27-50.)




FIG.3

The specification uses the term "guiding assembly" instead of "removable guideway," but it is clear from the surrounding context that an embodiment of the invention of claim 11 is being described. Thus, FIG. 3 and the corresponding disclosure in the specification shows an instance of how the "removable guideway" can be unscrewed and thereby removed from the "removable portion."

Moreover, the '368 Patent is about making modular templates (in other words, components that can be removed and replaced) with pieces that are cheaper to manufacture and more efficiently used. The patent is titled a "Modular template for drilling holes and method of making same," and an object of the invention is described as "to provide an improved modular manufacturing process for manufacturing drilling guides for use in conjunction with stops to control the location, trajectory and depth of penetration of a drill bit." ('368 Patent, 2:62-65.) An advantage of using modular components is that "[t]he cost of the surgical template is significantly lowered because the time for rapid manufacturing is substantially decreased, allowing more modular templates to be fabricated with less material than would be necessary to create an entire replica of the

radiographic splint with trajectories." (*Id.*, 7:62-67.) Thus, the characteristic of various components being "removable" from each other appears to be central to the claimed invention.

In addition to FIG. 3, the specification provides other context on what removable means: "The guideway is preferably positioned in a portion of the template which is removable from the remainder thereof." (*Id.*, 3:42-44.) In addition, "the modular part that is insertable and removable from the plastic helmet or sectional template has the appropriate trajectories (guideways) prepared in the correct sites through which the suitable surgical instrument will be placed in the body cavity." (*Id.*, 4:12-16.) Furthermore, the specification identifies precisely what it means for a component to be "removable," which shows the patentee understood the distinction that being removable means that it is not permanently affixed. (*See id.*, 7:6-9 ("In another embodiment of the invention, body 114' may be formed to include radiographic markers 158. These markers may be removable or permanently affixed, to body 114', as desired.")).

As neither party has argued a specialized meaning of "removable" in the art of modular manufacturing or dentistry, the plain and ordinary meaning applies. However, the plain and ordinary meaning of "removable" as read in the context of the patent claim and specification explains that it is "not permanently affixed." Accordingly, any kind of destructive alteration is not contemplated and not within the scope of this claim term.

The Court therefore finds **"removable guideway" to have its plain and ordinary meaning where "removable" means "not permanently affixed."**

**3. "guideway"**

| Claim term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "guideway"<br><br>(claims 11, 19) | Plain and ordinary meaning | "a part for defining the trajectory of a hole to be drilled" |

Plaintiff again proposes the plain and ordinary meaning of this term. Defendants argue that the term "guideway" does not have a plain and ordinary meaning known in the art and that the patentee acted as his own lexicographer in defining the term in the specification. Defendants cite instances in the specification where the patentee defined "trajectory" and "guideway" to mean the same thing. Defendants further argue that within the context of the asserted claims, the tool whose trajectory is being controlled is a drill, which provides context to this definition.

Plaintiff disagrees and contends that Defendants improperly add extraneous language by introducing the concept of "a part" into the claim where none exists. Plaintiff also point out that the claim language itself defines the "guideway" as merely requiring a "first end" which "opens onto said desired location," and nothing more. Plaintiff submits that introducing a functional purpose for the "guideway" is improper when the invention is claimed in purely structural terms. Accordingly, Plaintiff asserts "guideway" should be given its plain and ordinary meaning.

The term "guideway" appears in both claims 11 and 19 in similar context. The relevant portions of claim 19 read as follows:

> a ***guideway*** that is detachably connected to the body and having a first end positioned to open onto said desired location when said body is placed in conforming contact with the uncut irregular surface, wherein the ***guideway*** comprises an inner piece, which is configured as a removable stop, and an outer piece, and wherein the outer piece includes an outer surface fastened to an inner surface of the ***guideway***;

> the ***guideway*** having a second end positioned on an exterior surface of the body, and connected to the first end by a passage; and . . .

Although "guideway" may not be a commonly used word, it is readily understandable when read as part of the whole claim element in which it appears. Claim 19 recites a guideway as being "detachably connected to the body" with "a first end positioned to open onto said desired location when said body is placed in conforming contact with the uncut irregular surface" and "a second end positioned on an exterior surface of the body," where the second end is "connected to the first end by a passage." This detailed description imparts a visual image of what a guideway is within the template structure that is not ambiguous or unclear.

Disclosures in the specification further clarify the structure of a guideway by describing it as "trajectories (guideways) prepared in the correct sites through which the instrument will be placed in the body cavity." ('368 Patent, 3:27-29 and 4:14-16.) Moreover, "the second end of the guideway is connected to the first end by a preferably substantially linear passage which is positioned to define the desired trajectory of the hole to be drilled." (*Id.*, 3:39-42.) This image is further underscored by FIG. 3, *supra*, which identifies a removable "guiding assembly 136" that defines a "guideway 132." (*See id.*, 6:27-29 ("in FIG. 3, body 114' includes a removable portion 130 in which a guideway 132 is formed.")).

Accordingly, the meaning of "guideway" within the context of the patent claims and specification is clear and no special definition is given by the patentee. The parenthetical explanation of identifying the guideway as the "trajectory" or a "passage which is positioned to define the desired trajectory" simply restates the meaning that is already recited in the claim language itself. Thus, the Court does not find that the patentee acted as his own lexicographer here by clearly setting forth a particular definition apart from the plain and ordinary meaning of the term. *See ParkerVision, Inc. v. Vidal*, 88 F.4th 969, 975-6 (Fed. Cir. 2023) ("To act as its own

lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning and must clearly express an intent to redefine the term.") (internal quotation and citation omitted).

The Court therefore finds **the term "guideway" should be given its plain and ordinary meaning.**

**4. "when"**

| Claim term | Plaintiff's Construction | Defendants' Construction |
| --- | --- | --- |
| "when"<br><br>(claims 11, 19) | Plain and ordinary meaning | "at the same time" |

This term appears in claims 11 and 19 in similar contexts. For example, the relevant portion of claim 11 reads as follows:

> . . . a template comprising:
>
> a body including a custom surface shaped as a negative impression of the uncut irregular surface to conform to the uncut irregular surface, the body having a receiving section;
>
> a removable portion configured to be arranged in the receiving section;
>
> a removable guideway arranged at the removable portion and having a first end positioned to open onto said desired location ***when*** said body is placed in conforming contact with said uncut irregular surface, wherein the removable guideway comprises an inner piece and an outer piece, and wherein the outer piece includes an outer surface configured to engage an inner surface of the removable portion;

The disagreement between the parties is regarding the temporal relationship of whether the "removable guideway" must be positioned at the desired location at the same time as the "body is placed in conforming contact." Plaintiff advances the plain and ordinary meaning and Defendants

oppose. Defendants take issue with the fact that Plaintiff's infringement contentions identify two separate components (the Pin Guide and the Osteotomy Guide) of satisfying this limitation. The separate components, one alleged to meet the "body" element and the other alleged to meet the "removable guideway" element, are placed in position sequentially rather than at the same time, which, Defendants argue, is not what the claim requires. Plaintiff disagrees, asserting that a temporal restriction does not exist. Instead, Plaintiff contends that "when" is used in its ordinary sense, such that it is a precondition to another event, but not necessarily requiring "at the same time" as proposed by Defendants. Plaintiff appears to say that two components can meet this limitation so long as the "body" is placed in position first, even if it is then removed, before the "guideway" is placed in position.

The Court notes that Claim 11 is an apparatus claim about a template having multiple components including a "body having a receiving section," "a removable portion configured to be arranged in the receiving section" of the body, and "a removable guideway arranged at the removable portion and having a first end positioned to open onto said desired location ***when*** said body is placed" at a certain location. It is not a method claim so the timing or sequence of the components of the template being put into use is irrelevant. The claimed template must simply have its components arranged in the recited configurations to meet all the claim elements. The word "when" sets forth the physical, rather than temporal, relationship between the two components and is subject to its plain and ordinary meaning.

Claim 19 is also an apparatus claim. It similarly requires a guideway to be "detachably connected to the body and having a first end positioned to open onto said desired location ***when*** said body is placed in conforming contact with the uncut irregular surface." The term "when," again, sets forth the physical relationship between the components. Neither side has argued "when"

to be a specialized word and, as used in the claim, it's meaning is straightforward and unambiguous.

The Court finds that **"when" should be given its plain and ordinary meaning.**

**5. "removable stop"**

| Claim Phrase | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "removable stop"<br><br>(claims 19) | Plain and ordinary meaning | "a stop that is designed to be removed from the guideway during normal use" |

The dispute as to this term is similar to Term #2 regarding whether "removable" can encompass destructive alteration.

Plaintiff again argues that nothing in the specification teaches or requires that the claimed "removable stop" must be "designed to be removed" or that it necessarily be "removed from the guideway." Plaintiff asserts that the claim language does not foreclose the option of having the "guideway" and "inner piece configured as a removable stop" be "removed" together. Defendants respond that, like in the "removable guideway" term, the infringement contentions identify the Osteotomy Guide as meeting this claim limitation when it does not contain any parts that can be removed during normal use, and that "removable stop" cannot include a stop that is removable only by destructive force.

As in the prior terms, the Court does not consider Plaintiff's infringement contentions to have direct bearing on claim construction except to provide an exemplary application of the plain and ordinary meaning of this claim term. Looking at claim 19, it reads in relevant part as follows:

> a guideway that is detachably connected to the body and having a first end positioned to open onto said desired location when said body is placed in conforming contact with the uncut irregular surface, wherein the guideway

> comprises an inner piece, which is configured as a ***removable stop***, and an outer piece, and wherein the outer piece includes an outer surface fastened to an inner surface of the guideway;
>
> the guideway having a second end positioned on an exterior surface of the body, and connected to the first end by a passage; and
>
> the ***removable stop*** for limiting a depth of penetration of said instrument into said hole.

A plain reading of the claim language shows that the inner piece of the guideway is configured as a removable stop. The term is made up of two words, "removable" and "stop," and both must impart meaning. The word "removable" describes the object, the "stop," and its ordinary meaning is that the stop is capable of being removed. Plaintiff's interpretation of "removable" being applied more expansively to also include the guideway, which is separately described as detachable, would either become redundant or render the word "removable" to be completely meaningless. And, as the words "removable stop" are next to each other, "removable" most reasonably describes the nearest object and not the whole "guideway" as being removable altogether.

This ordinary meaning of "removable" is reinforced by the specification. FIG. 3, below, shows the inner piece 138 having "a shoulder 146 which acts as a stop for the drill bit" which is shown to be connected by threading, so it can be screwed in, and also unscrewed to be removed from the outer piece 140. ('368 Patent, 6:34-40.)




FIG.3

"Inner piece 138 may then be screwed into outer piece 140 until shoulder 146 reaches the desired position to act as a stop for the drill bit." (*Id.*, 6:45-47.) Indeed, the ability to move the stop to different depths is described in detail as an advantage of the invention. (*See id.*, 6:51-62.) Moreover, the specification has identified precisely what the patentee means for something to be "removable," which shows that he understood the distinction that a component being removable means that it is not permanently affixed. In describing radiographic markers, the patentee disclosed two options in that "[t]hese markers may be removable or permanently affixed, to body 114', as desired." (*See id.*, 7:6-9.) In other words, a component being removable means that it is not permanently affixed. Accordingly, any kind of destructive alteration is not contemplated and not within the scope of this claim term.

The Court therefore finds that **"removable stop" to have its plain and ordinary meaning where "removable" means "not permanently affixed."**

**6. "outer piece includes an outer surface fastened to an inner surface of the guideway"**

| Claim Phrase | Plaintiff's Construction | Defendants' Construction |
| --- | --- | --- |
| "outer piece includes an outer surface fastened to an inner surface of the guideway"<br><br>(claim 19) | Not indefinite.<br><br>Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b). |

The question of indefiniteness is whether the patent reasonably informs one of skill in the art about the scope of the claimed invention. Here, the issue is whether the invention as recited in claim 19 has a definite structure where the outer surface of the outer piece is fastened to an inner surface of the guideway.

Plaintiff submits that the claim as read in light of FIG. 3 in the patent specification defines a definite embodiment of this claim element because it identifies an "outer piece" (indicated by reference numeral 140) which includes an "outer surface" (indicated by reference numeral 150), together with an "inner surface" (indicated by reference numeral 152). Defendants deny that FIG. 3 is helpful to Plaintiff's argument by pointing out that the relevant claim language is not about the inner surface 152 of removable portion 130. Rather, Defendants note that the inner surface in the claim language is the "inner surface of the guideway," not the inner surface of the removable portion, as Plaintiff suggests.

The Court first looks to the claim language. The relevant portion of claim 19 reads as follows:

> a guideway that is detachably connected to the body and having a first end positioned to open onto said desired location when said body is placed in conforming contact with the uncut irregular surface, wherein the guideway comprises an inner piece, which is configured as a removable stop, and an outer

piece, and wherein the ***outer piece includes an outer surface fastened to an inner surface of the guideway;***

The claim language defines "guideway" as having at least two components: "an inner piece, which is configured as a removable stop" and "an outer piece." It uses the prosecution term of art "comprises," which is open-ended and makes allowance for additional components.

Turning to the specification and FIG. 3, the "guiding assembly 136" is identified as including an "inner piece 138" and an "outer piece 140." ('368 Patent, 6:33-34.) The inner piece has "a shoulder 146 which acts as a stop for the drill bit." (*Id.*, 6:34-37.) And the "outer piece 140" is described as having "a threaded outer surface 150." (*Id.*, 6:38-40). Additionally, a "[r]emovable portion 130" is identified as having "a threaded inner surface 152, having threads configured to engage the threads on outer surface 150 of outer piece 140." (*Id.*, 6:41-43.) "In this fashion, outer piece 140 may be fastened in removable portion 130 by screwing it thereinto." (*Id.*, 6:43-45.)




FIG.3

Separately, a "guideway" is identified as 132. Although FIG. 3 points to the lower end of the passage as guideway 132, the guideway also extends upward. The specification describes FIG.

3 as illustrating how "body 114' includes a removable portion 130 in which a guideway 132 is formed." (*Id.*, 6:27-29.) This suggests that the inner cavity of the removable portion defines the guideway 132. The specification goes on to confirm this reading by describing that a "guiding assembly 136 [is] inserted in guideway 132." (*Id.*, 6:31-33.) In order for the guiding assembly, which includes both the inner piece and the outer piece, to be inserted in the guideway, the guideway must be the entire cavity of the removable portion as depicted in FIG. 3. Thus, the "inner surface of the guideway," as claimed, can be the inner surface of the removable portion 130.

Because the specification identifies cavity 132 as the "guideway," and the claim language is written in a nonlimiting nature, a person of ordinary skill can reasonably ascertain that the composite of the inner piece, outer piece, and the cavity of the removable portion are all part of the claimed guideway. FIG. 3 illustrates an embodiment where the outer surface of the outer piece is fastened to the inner surface of the guideway, exactly as described in claim 19. For this reason, the term cannot be indefinite.

The Court therefore finds the term **"outer piece includes an outer surface fastened to an inner surface of the guideway" to not be indefinite.**

## V. CONCLUSION

The Court adopts the constructions as set forth in this opinion for the disputed terms of the Patents-in-Suit.

The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**So ORDERED and SIGNED this 8th day of November, 2024.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE